UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN COURTHOUSE

| | |
|---|---|
| Eukarys Medina, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Costco Wholesale Corporation,<br><br>Defendant | 1:22-cv-07388<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Costco Wholesale Corporation ("Defendant") manufactures, labels and sells 5.73 liters of detergent marketed as sufficient for 146 loads of laundry under its Kirkland Signature Ultra Clean brand ("Product").



2. Though "146 Loads" grabs the purchaser's attention, this is followed by a difficult-to-see asterisk.

3. The front label does not inform consumers that an explanation for the asterisk can be found on the back label.

4. Only when the container is reversed and the consumer wades through a wall of pictures, symbols and words of varying size, font and color, will they learn the amount of detergent is only sufficient for "[*] 146 loads when filled to slightly below line 4 on the cup."





5. Though the label designates "line 4" as corresponding to "Regular" size loads of laundry, the only other size indicated is "Large," which means "Regular" is more accurately described as "Small."

6. For the majority of Americans who do laundry in loads reasonably characterized as "large," they will only have enough detergent for roughly 73 loads.

7. The representation of 146 loads when users will achieve half of that number is misleading because it is a significant disparity.

8. The Product contains other representations and omissions which are false and misleading.

9. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $20.59 for 5.73 L, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

10. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

11. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

12. Plaintiff is a citizen of New York.

13. Defendant is citizen of Washington because it is a Washington corporation with a principal place of business in King County, Washington.

14. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

15. The members of the class Plaintiff seeks to represent are more than 100, because the Product is sold with the representations described here in thousands of stores and online, in the States Plaintiff seeks to represent.

16. Venue is in this District with assignment to the Brooklyn Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Kings County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

Parties

17. Plaintiff Eukarys Medina is a citizen of Brooklyn, Kings County, New York.

18. Defendant Costco Wholesale Corporation, is a Washington corporation with a principal place of business in Issaquah, Washington, King County.

19. Defendant operates close to six hundred warehouse stores in the United States.

20. Defendant's business model is based on an annual membership fee of $120.

21. By using the membership fee as a source of revenue, Defendant sells higher quality goods at lower prices than competitors because it does not need to maximize profit on every item.

22. Through the internet, even non-members can purchase from Costco through delivery services.

23. While Costco sells leading national brands, it also sells a large number of products under one of their private label brands, Kirkland Signature.

24. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

25. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

26. Products under the Kirkland Signature brand have an industry-wide reputation for quality and value.

27. In releasing products under the Kirkland Signature brand, Defendant's foremost criteria was high-quality, equal to or better than the national brands.

28. Defendant is able to get national brands to produce its private label items due its loyal customer base, history of high quality items and tough negotiating.

29. That Kirkland Signature branded products met this high bar was proven by focus groups, which rated them above the name brand equivalents.

30. Private label products generate higher profits because national brands spend significantly more on marketing, contributing to their higher prices.

31. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

32. Private label products under the Kirkland Signature brand benefit by their association with consumers' appreciation and awareness of the Costco brand as a whole.

33. The development of private label items is a growth area for Costco, as it selects only top suppliers to develop and produce Kirkland Signature products.

34. Plaintiff purchased the Product at stores including Costco, 976 3rd Ave, Brooklyn, NY 11232 between September 2022 and November 2022, and/or among other times.

35. Plaintiff read and relied on "146" on the front label which she understood referred to the number of loads of laundry she would be able to do from the Product.

36. Plaintiff did not notice or pay closer attention to the small asterisk next to "loads."

37. Plaintiff bought the Product at or exceeding the above-referenced price.

38. Plaintiff paid more for the Product than she would have had she known the amount of detergent was sufficient for roughly half of that number of loads of laundry, or would not have purchased it.

39. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

40. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

Class Allegations

41. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, West Virginia, Arkansas, South Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

42. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

43. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

44. Plaintiff is an adequate representative because her interests do not conflict with other members.

45. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

46. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

47. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

48. Plaintiff incorporates by reference all preceding paragraphs.

49. Plaintiff saw and relied on the label which stated the Product could be used to do 146 loads of laundry, not half loads, described on the label as "regular."

50. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

51. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

52. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

53. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

54. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that the Product

55. could be used to do 146 loads of laundry, not half loads, described on the label as "regular."

56. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

57. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, including getting the best value for their money.

58. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it could be used to do 146 loads of laundry, not half loads, described on the label as "regular."

59. Defendant's representations affirmed and promised that it could be used to do 146 loads of laundry, not half loads, described on the label as "regular."

60. Defendant described the Product so Plaintiff believed it could be used to do 146 loads of laundry, not half loads, described on the label as "regular," which became part of the basis of the bargain that it would conform to its affirmations and promises.

61. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

62. This duty is based on Defendant's outsized role in the market for this type of Product, the recognized Kirkland Signature brand of detergent.

63. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

64. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

65. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

66. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

67. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it could be used to do 146 loads of laundry, not half loads, described on the label as "regular."

68. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that it could be used to do 146 loads of laundry, not half loads, described on the label as "regular," and she relied on its skill and judgment to select or furnish such a suitable product.

### Unjust Enrichment

69. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;

9

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: December 6, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

James Chung Law Office
43-22 216th St
Bayside NY 11361
(718) 461-8808
Jchung_77@msn.com